**In re Coordinated Pretrial Proceedings in ANTIBIOTIC ANTITRUST ACTIONS.**

*Richard X. Connors, et al., v. Chas. Pfizer & Co., Inc., et al.,* (E.D. Virginia, Civil Action No. 70–70–A).

**M 19–93A and 70 Civ. 1073.**

United States District Court,
S. D. New York.

March 30, 1971.

MISCELLANEOUS ORDER NO. 71–8

MEMORANDUM AND ORDER

MILES W. LORD, District Judge (By Assignment).

This action is one of more than 150 related treble damage antitrust actions transferred to the Southern District of New York under 28 U.S.C. § 1407.[1] All were originally assigned to the Honorable Inzer B. Wyatt of the Southern Dis-

---

1. The first group of cases was transferred on October 21, 1968. In re Antibiotic Drugs, 295 F.Supp. 1402. Since then, numerous "tag-along cases" have also been transferred to the Southern District of New York. See, for example, 303 F.Supp. 1056 (Jud.Pan.Mult.Lit.1969). This action was transferred to New York without objection on March 13, 1970.

trict of New York for coordinated or consolidated pretrial proceedings.

On February 6, 1969, the defendants made a written offer of a hundred million dollars in settlement of all of the claims of states, counties, cities and their political subdivisions, and the claims of wholesalers, retailers and individual consumers of the broad spectrum antibiotic drugs involved in the alleged conspiracy. State of West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710, 722 (S.D.N.Y.1970).[2] On December 2, 1970, the Judicial Panel on Multidistrict Litigation reassigned all of the "non-settling cases" including the above case to the undersigned judge sitting by designation in the Southern District of New York. In re Antibiotic Drug Litigation, 320 F. Supp. 586 (Jud.Pan.Mult.Lit.1970).

On September 29, 1970, Judge Wyatt dismissed the settling state actions, including a class action brought by the Commonwealth of Virginia. (Hereinafter referred to as the "Virginia Class Action.") The defendants have filed a motion to dismiss this action on the ground that the claims of all six plaintiffs are barred by the judgment in the Virginia Class Action. Extensive briefs were filed and this matter was argued in San Francisco on March 23, 1971.

A further chronology of events is essential to the court's decision in this matter. On July 1, 1969, a notice of the establishment of the individual state consumer class actions was given as required by Rule 23(c) (2), F.R.Civ.P. The notice relating to the Virginia Class Action was published in 28 daily Virginia newspapers and in three Washington, D.C. newspapers of general circulation. The class included all persons who purchased these drugs in the state during the relevant period. The consumer class members were given until August 1, 1969, to exclude themselves from the class and they were notified that if they

intended to make a claim against the settlement fund, they had to file a verified statement of purchase by August 16, 1969. The notice also contained the following provision:

If you do not make an individual claim by August 16, 1969, that will constitute an authorization to the Attorney General * * * to utilize whatever money he may recover as your representative for the benefit of the citizens of your State in such manner as the Court may direct. State of West Virginia v. Chas. Pfizer & Co., Inc., et al., 314 F.Supp. 710, 725.

On February 24, 1970, a notice of the proposed compromise and settlement, as required by Rule 23(e), was published in the same newspapers. This notice provided that a hearing would be held on March 24, 1970 to determine whether the settlement should be approved.

This action was commenced on February 17, 1970, by six residents of Fairfax County, Virginia.[3] None of the six "opted out" of the Virginia Class Action or filed a statement of claim. They contend that they are not bound by the judgment in the Virginia Class Action on the ground that the manner by which the settlement offer was made, accepted and approved violated the constitutionally-protected rights of the absent class member. They specifically contend that the (c) (2) notice and the (e) notice were both defective; that the class representative—the Attorney General of the Commonwealth of Virginia—had an interest antagonistic to them and other members of the class; and that a disproportionate share of the settlement was distributed to the states and their political subdivisions to the detriment of the *consumers* within the state.

Plaintiffs rely heavily on the decision in Hansberry v. Lee, 311 U.S. 32, 61 S.

2. A second settlement offer covered the claims of private hospitals and Blue Cross-Blue Shield Insurance Plans.

3. At least two of the plaintiffs no longer reside in Virginia but it is not suggested that their subsequent relocation to Massachusetts has removed them from the Virginia class.

Ct. 115, 85 L.Ed. 22 (1940), which held that in circumstances of that case, the absent members of the class would not be bound by a judgment rendered in an action in which their rights were not adequately protected. But the Court went on to emphasize that it was

> * * * familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, or *where they actually participate in the conduct of the litigation* in which members of the class are present as parties, * * * or where the interest of the members of the class, some of whom are present as parties, is joint, or where for any reason the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter. 311 U.S. at 43–44, 61 S.Ct. at 118 [Emphasis added]

The indisputable fact is that these six plaintiffs were fully and fairly represented by their attorney, Mr. Paul Scanlon, at the hearing held in New York on March 25, 1970, to determine whether or not the proposed settlement should be approved.[4]

When Judge Wyatt finally approved the settlement, Mr. Scanlon filed a notice of appeal but later decided that an appeal was not the proper procedure to attack the validity of the settlement and chose, instead, to press the matter *collaterally* through this action.[5] *Hansberry* compels the dismissal of this action. Since these plaintiffs, through their counsel, actually participated in the hearing before Judge Wyatt, they are bound by the judgment in the Virginia Class Action, subject of course, to attack by direct appeal to the appropriate court.

It is therefore ordered that the defendants' motion to dismiss is hereby granted and this cause is dismissed with prejudice.

---

4. Counsel made it clear that he was appearing on behalf of the six plaintiffs in this case.

"MR. SCANLON: Your Honor, I am here today representing six individuals who are residents of the State of Virginia—

THE COURT: Are you in the action which was brought in Virginia and which has recently been transferred here?

MR. SCANLON: That is correct, your Honor. The six plaintiffs who are in that suit neither excluded themselves from the Attorney General's class nor did they file a claim, nor did they intervene pursuant to the notice published July 1. Therefore, your Honor, at this moment *they are within the confines of the class represented by the Attorney General of the Commonwealth.*

* * * * *

We are here today, your Honor, pursuant to a notice authorized under Rule 23(e), and this hearing is governed by Section 23(c) of the Federal Rules of Civil Procedure." Transcript of the hearing before Judge Wyatt on March 25, 1970, pp. 244–245 [Emphasis added]. The transcript of Mr. Scanlon's remarks consume fifty pages of the transcript of that hearing.

5. Following the entry of judgment in the settling cases, notices of appeal were filed by several parties including some representing absent class members. This appeal was expedited and was also heard on March 23, 1971. Many of the issues raised by counsel in his brief before this court are also being presented to the Court of Appeals.