AMERICAN BASKETBALL ASSOCIA-
TION PLAYERS ASSOCIATION, an
unincorporated association, by James
Eakins its President on its behalf, et al.,
Plaintiffs,

v.

NATIONAL BASKETBALL ASSOCIA-
TION, a joint venture, et al., De-
fendants.

No. 75 Civ. 6184.

United States District Court,
S. D. New York.

Dec. 19, 1975.

Lovejoy, Wasson, Lundgren & Ashton
by Edwin E. McAmis, Daniel J. Sullivan,
Douglas Foster, New York City, Smith,
Cohen, Ringel, Kohler & Martin by
Prentice Q. Yancy, Jr., Atlanta, Ga., for
plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn
by David J. Stern, Jeffrey A. Mishkin,
New York City, for defendants NBA and
NBA Teams.

Spengler, Carlson, Gubar & Churchill
by Robert S. Carlson, New York City,
for defendants Long Island Sports En-
terprises, Inc. and Denver Nuggets
Basketball, Ltd.

Paul, Weiss, Rifkind, Wharton & Gar-
rison by George P. Felleman, New York
City, for defendants Madison Square
Garden Corp. and Madison Square Gar-
den Center, Inc.

## OPINION

ROBERT L. CARTER, District Judge.

In September, 1974, plaintiff, the
American Basketball Association Players

Association (ABA Players Ass'n), filed a motion to intervene in *Robertson v. National Basketball Association* (70 Civ. 1526), pending before this court. For procedural and technical reasons, permission was granted to ABA Players Ass'n to withdraw their motion and to refile the same by September 20, 1974. Plaintiff decided not to renew the motion. On November 24, 1975, plaintiff by Order to Show Cause again sought to intervene in the *Robertson* case. The motion was denied on December 5, 1975, specifically because of its untimeliness and the possibility of prejudice to the existing parties in *Robertson.*

Thereafter on December 8, 1975, plantiff ABA Players Ass'n, along with three individual players, for themselves and others similarly situated, instituted this proceeding as an independent and separate action. The complaint substantially tracks the allegations set forth in the proposed intervenor complaint in *Robertson.* The National Basketball Association (NBA) is charged with effectuating an unlawful conspiracy and combination to violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. The major thrust of the complaint is that the NBA is seeking a monopoly of professional basketball by eliminating the American Basketball Association (ABA) as a viable and effective rival in the field.

Plaintiffs now move for a preliminary injunction to bar the NBA from holding a special draft of Moses Malone, Shep Wise, Mel Bennett, Mark Olberding and Charles Jordan who are currently players in the ABA.

A hearing was held on December 8, 1975, to determine whether this action is related to the *Robertson* case and ought properly to be assigned to me pursuant to Rule 13 of the Calendar Rules of this court. The parties and the court agreed that this action is related to *Robertson* and should be assigned to me.

At the December 8th hearing, at the court's request, the NBA agreed to postpone the special draft then scheduled for December 9th, pending determination of this motion for preliminary injunction. The NBA also agreed to file its answering papers by December 11th, and the court advised the parties that if either side desired an evidentiary hearing, December 12th, 23rd, and 24th were available. The plaintiff was given until December 9th to file its memorandum of law in support of its motion for preliminary relief. The NBA advised the parties and the court on or about December 10th that it wished an evidentiary hearing and would be prepared to proceed on December 12th. Plaintiff did not seek a later date.

The evidentiary hearing disclosed that Lawrence O'Brien, Commissioner of the NBA, and Simon P. Gourdine, Deputy Commissioner, in October or November, 1975, aware that some of the ABA clubs were going out of business, discussed the possibility that some of the players under contract to an ABA club might desire to negotiate with an NBA club. O'Brien and Gourdine canvassed the roster of ABA players and determined that, for NBA purposes, the ABA players fell into three categories: (1) those with whom an NBA club already held NBA rights to negotiate pursuant to an NBA annual player draft; (2) those eligible for NBA draft but not drafted by any NBA club; and (3) those who had not been eligible for NBA draft at its last annual draft, but had since become eligible. Those in the first category interested in playing in the NBA would be required to negotiate with the NBA club holding their draft rights. Those in the second category would be free to negotiate with any NBA club they wished and vice versa. Those in the third category were the five players who are the subject of the instant motion. As to those players it was determined that a special draft would be held. A telegram setting forth the above was sent out to NBA owners on or about November 18th. In early December, Malone's attorney advised the NBA

Commissioner that Malone was free to negotiate with an NBA club or clubs and inquired with what club or clubs Malone could negotiate.

O'Brien and Gourdine decided that if no procedure was available for Malone to negotiate with NBA clubs when he wanted to, then the NBA might be violating this court's injunction which bars the NBA from refusing to negotiate with players from the rival league. They decided that it was necessary that the special draft for the NBA rights to the five players be set for an early date. December 9th was the date chosen and on December 4th they notified the owners to that effect. The NBA also issued a public statement which was widely disseminated announcing the special draft.

Two other witnesses testified at the December 12th hearing: George Carter, a former professional basketball player with the NBA and more recently with the ABA; and Donald Schupak, limited partner and general counsel of the Spirits of St. Louis, an ABA team. The testimony of both witnesses apparently was intended to show the harmful effect on the ABA holding the special draft would have at this time, but neither witness was in a position of special knowledge, experience or exposure to give informed testimony. No evidentiary proof was presented by any witness having familiarity with the recent applications to the NBA by ABA clubs. There was no proof of any NBA official or owner making any statements or taking any action from which a conspiracy or unlawful combination to destroy the ABA could reasonably be inferred. The essence of plaintiffs' proof was that the ABA was hurting, and the conclusion of the plaintiffs was that the NBA was responsible.

*Discussion*

■ It is clear that the NBA will suffer no injury if the special draft is postponed since the stated reason for holding it now is to maintain a posture of compliance with the previous order of this court. If it has no mechanism for dealing with Malone and others because of this court's order in the instant motion, the NBA obviously cannot be held to have violated the court's earlier mandate. If that were the only consideration, plaintiffs' motion would be granted since the special NBA draft and its attendant publicity will certainly not enhance the ABA's public image, and could conceivably further erode the chances of the league for survival. Unfortunately for plaintiffs' purposes, no credible evidence supporting either of these propositions was proffered at the evidentiary hearing. The burden is on the party seeking a preliminary injunction affirmatively to show its entitlement to relief. *Stark v. New York Stock Exchange*, 466 F.2d 743, 744 (2d Cir. 1972).

■ The yardstick determinative on a motion for preliminary injunction is a showing of irreparable injury and the likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardship tipping decidedly in favor of the party requesting preliminary relief. These standards are so firmly fixed by the court decisions of this circuit, *see Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973); *Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.*, 476 F.2d 687, 692–93 (2d Cir. 1973); *Kaufmann v. Lawrence*, 386 F.Supp. 12, 15 (S.D.N.Y.1974), *aff'd*, 514 F.2d 283 (2d Cir. 1975), that citation of authority is not needed. Because the issues raised are of considerable public importance and have potentially far-reaching consequences, the serious-question test is, I suggest, the appropriate test to be applied.

I should make clear at the outset what issue is being explored. Part of the plaintiffs' presentation indicates that its counsel may view the issue to be the

lawfulness of the NBA draft of ABA players. As I understand the proof submitted, the NBA annually holds a draft of all eligible basketball players, and those clubs to whom NBA draft rights to players are assigned have the exclusive right to negotiate for the services of those particular players. Some of these players drafted by the NBA actually sign with an ABA club. The ABA follows a similar procedure, and some of the players to whom ABA clubs have draft rights sign with the NBA. While my tentative view, that the demise of the NBA's college draft as condemned by the Sherman Act is all but certain, is a matter of record, *see Robertson v. NBA,* 389 F.Supp. 867, 895 (S.D. N.Y.1975), it is clear that a full and final evaluation of the draft and other NBA practices must await trial on the merits, which is set for June 1st next. Thus, the basic lawfulness of the NBA draft procedure is not a consideration on this motion.

 The critical issue on which plaintiffs' motion turns is the nature of its proof that the NBA has conspired to eliminate the ABA as a rival league and that the decision to hold the special draft of Malone and company and the public announcement of the plans for that event were part of that conspiracy to violate the antitrust laws.

There has been no credible evidence establishing any such scheme or conspiracy by the NBA to eliminate the ABA. There has been no proof that the troubles of ABA clubs can be attributed to any action by the NBA or any of its clubs or owners. Nor has any credible evidence been submitted that the applications for admission to the NBA taken by two ABA franchises resulted from NBA initiative. Moreover, there is not a scintilla of credible evidence that either the decision to hold a special draft of the five players in question now, or to announce that draft publicly was part of any conspiracy to weaken or remove the ABA as a competitive force in professional basketball. While the probabil-

ity is that holding the special draft now may inflict further wounds on the ABA, the NBA is not required to refrain from action which may be hurtful to a competitor. A conspiracy within the meaning of the Sherman Act must be established. *See Checker Motors Corp. v. Chrysler Corp.,* 283 F.Supp. 876, 885 (S.D.N.Y.1968), *aff'd* 405 F.2d 319 (2d Cir.), *cert. denied* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed. 777 (1969).

Therefore, even under the lesser serious-questions standard, entitlement to the requested relief has not been established. Accordingly, the motion for preliminary injunction is denied.

The above constitutes the court's findings of fact, Rule 52, F.R.Civ.P.

So ordered.