682

Oscar ROBERTSON, William Bradley, Joe Caldwell, Archie Clark, Mel Counts, John Havlicek, Donald Kojis, Jon McGlocklin, McCoy McLemore, Thomas Meschery, Jeffry Mullins, Westly Unseld, Richard Van Arsdale and Chester Walker, individually and as representatives of all present and future active players in the National Basketball Association, Plaintiffs-Appellees,

Wilton N. Chamberlain, Clifford Ray and Chester Walker, Objectors-Appellants,

v.

NATIONAL BASKETBALL ASSOCIATION, a joint venture, Madison Square Garden Center, Inc., Madison Square Garden Corporation, Milwaukee Professional Sports & Services, Inc., The Capital Bullets Basketball Club, Inc. (formerly The Baltimore Bullets Basketball Club, Inc.), Riko Enterprises, Inc., Kings Professional Basketball Club, Inc. (formerly Cincinnati Basketball Club Company), Boston Celtic Basketball Club, Inc. (formerly Trans National Communications, Inc.), Detroit Pistons Basketball Company (formerly Zollner Corporation), Atlanta Hawks Basketball, Inc., California Sports, Incorporated, The Chicago Professional Basketball Corporation, Phoenix Professional Basketball Club, Golden State Warriors (formerly San Francisco Warriors), Seattle Supersonics Corporation, Texas Sports Investments, Inc. (formerly San Diego Basketball Club), Buffalo Braves, Inc., Cleveland Professional Basketball Company, Pro Basketball, Inc., New Orleans Professional Basketball Club and American Basketball Association, Defendants-Appellees.

Nos. 1177, 721, Docket 76–7442, 76–7451.

United States Court of Appeals,
Second Circuit.

Argued April 7, 1977.

Decided June 9, 1977.

Steven M. Kramer, Richard G. Phillips, Philadelphia, Pa. (Rogers, Hoge & Hills, New York City, of counsel), for objectors-appellants Walker and Ray.

John H. Boone, San Francisco, Cal. (Geoffrey P. Knudsen, Boone, Schatzel, Hamrick & Knudsen, San Francisco, Cal., Seymour S. Goldberg, Encino, Cal., John H. Cleveland, III, Peter J. McHugh, Hill, Betts & Nash, New York City, of counsel), for objector-appellant Chamberlain.

Peter Gruenberger, New York City (Ira M. Millstein, James W. Quinn, Irwin H. Warren, Weil, Gotshal & Manges, New York City, of counsel), for plaintiffs-appellees.

Michael A. Cardozo, New York City (David J. Stern, Jeffrey A. Mishkin, Richard L. Wasserman, Proskauer, Rose, Goetz & Mendelsohn, New York City, of counsel), for defendants-appellees other than Madi-

son Square Garden Center, Inc. and Madison Square Garden Corp.

Jay Topkis, George P. Felleman, Sidney H. Stein, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants-appellees Madison Square Garden Center, Inc. and Madison Square Garden Corp.

Robert S. Carlson, William J. McSherry, Jr., Spengler, Carlson, Gubar, Churchill & Brodsky, New York City, Prentiss Q. Yancey, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., filed brief for American Basketball Ass'n Players Ass'n, American Basketball Ass'n, Long Island Sports, Denver Nuggets, Inc., San Antonio Basketball, Ltd., and Arena Sports, Inc., as amici curiae urging affirmance.

Before OAKES, Circuit Judge, WYZANSKI *, and HOLDEN,** District Judges.

OAKES, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Robert L. Carter, *Judge*, approving under Fed.R.Civ.P. 23(e) a settlement of an antitrust class action brought against the professional basketball league known as the National Basketball Association (NBA) and its constituent teams by a class consisting of the 479 individuals who played in the league at some

* *Senior Judge of the United States District Court for the District of Massachusetts, sitting by designation.*

** *Chief Judge of the United States District Court for the District of Vermont, sitting by designation.*

1. Judge Carter considered all of the factors that, in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), this court indicated were relevant in determining the fairness of a settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9)

point during the pendency of this action. At the time of settlement, the suit was six years old, discovery had been substantially completed, and Judge Carter had had ample opportunity to become thoroughly familiar with the evidence. His opinions on various aspects of the case are reported at 72 F.R.D. 64 (S.D.N.Y.1976); 413 F.Supp. 88 (S.D.N.Y.1976); 404 F.Supp. 832 (S.D.N.Y. 1975); 67 F.R.D. 691 (S.D.N.Y.1975); and 389 F.Supp. 867 (S.D.N.Y.1975). Appellants are the only three members of the plaintiff class to object to the settlement. After a settlement hearing at which their objections were fully aired, Judge Carter exhaustively canvassed the relevant criteria [1] and approved the settlement as fair, reasonable, and adequate. 72 F.R.D. 64. Appellants, while not attacking the general fairness of the settlement, have three specific objections to it. Finding all three to be meritless, we affirm.

### Certification of the Class Under *Fed.R.Civ.P. 23(b)(1)*

■ Appellants' first objection is that the class was certified under Fed.R.Civ.P. 23(b)(1), rather than under Rule 23(b)(3). Certification under the latter provision would have given them the opportunity to opt out of the class as provided in Rule 23(c)(2).[2] They argue that Rule 23(b)(1)(A),

> the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]
>
> 495 F.2d at 463 (citations omitted).

2. Fed.R.Civ.P. 23(b) and 23(c) provide in relevant part:

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the

which requires a court to find that individual lawsuits would establish "incompatible standards of conduct" for the party opposing the class, has not been complied with here. We need not decide this question, however, because appellants do not argue the invalidity of Judge Carter's concurrent certification of the class under Rule 23(b)(1)(B).

This alternative certification requires a court to find that individual actions would "as a practical matter" impair or impede the rights of class members not before the court. The court so found, 389 F.Supp. at 901, and this finding seems ineluctable. By first preventing the merger of two competing basketball leagues, thus creating more job opportunities and, probably, keeping player salaries higher than they might otherwise have been, and then causing extensive changes in league rules to be made, this class action has furthered interests of all class members that would certainly have been impaired if individual suits, with inevitably disparate results, had been allowed. *See* Advisory Committee Note to Rule 23(b)(1)(B) (1966); 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1774 (1972).

■ Appellants also argue briefly that Rule 23(b)(1) cannot be used here because the action is essentially one for damages. Whatever the merits of this argument might be in a case in which only damages from past injury were sought, in the instant case the relief sought included not only damages but also equitable relief, particularly the application in the future of uniform rules and contracts to all parties concerned. In such cases, Rule 23(b)(1) certifi-

cation is plainly proper. *See Larionoff v. United States*, 365 F.Supp. 140, 143 (D.D.C. 1973), *aff'd in relevant part*, 533 F.2d 1167, 1181–82 n. 36 (D.C.Cir.1976), *cert. granted*, 429 U.S. 997, 97 S.Ct. 522, 50 L.Ed.2d 607 (1976); *Mungin v. Florida East Coast Railway*, 318 F.Supp. 720 (M.D.Fla.1970), *aff'd mem.*, 441 F.2d 728 (5th Cir.), *cert. denied*, 404 U.S. 897, 92 S.Ct. 203, 30 L.Ed.2d 175 (1971).

■ Of course, as Judge Carter noted, 389 F.Supp. at 902–03, certification of this action under Rule 23(b)(3) would also have been appropriate. As the judge correctly concluded, however, when a class action may be certified under either (b)(1) or (b)(3), the former should be chosen when to do so will avoid the inconsistent adjudication or compromise of class interests that might otherwise occur. *Walker v. City of Houston*, 341 F.Supp. 1124, 1131–32 (S.D. Tex.1971); *Mungin v. Florida East Coast Railway, supra*, 318 F.Supp. at 730; *Van Gemert v. Boeing Co.*, 259 F.Supp. 125, 130 (S.D.N.Y.1966); 7A C. Wright & A. Miller, *supra*, § 1772, at 7. Here just such inconsistency was a consummation devoutly to be feared.

■ Appellants' final class action argument is that, if (b)(1) certification is appropriate, that provision is unconstitutional as applied to them because the denial of an opportunity to opt out of the class violates the due process clause of the Fifth Amendment. While the due process clause imposes definite limitations on Rule 23, those limitations concern adequacy of representation, notice, and opportunity to participate and be heard, *see Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22

adjudications or substantially impair or impede their ability to protect their interests; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

(c) *Determination by Order Whether Class Action to be Maintained; Notice; Judgment;*

*Actions Conducted Partially as Class Actions.*

(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date . . . .

(1940); *Arthur Andersen & Co. v. Ohio (In re Four Seasons Securities Laws Litigation)*, 502 F.2d 834, 843 (10th Cir.), cert. denied, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974); *cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (notice requirements of Rule 23(c)), none of which are challenged here. When appropriate notice and opportunity have been provided, preclusion of the opt-out right in a (b)(1) settlement does not violate due process. *See American Employers' Insurance Co. v. King Resources Co.*, 20 Fed.Rules Serv.2d 161, 163–64 (D.Colo.1975) (Arraj, C. J.); *cf. In re Antibiotic Antitrust Actions*, 333 F.Supp. 296, 298 (S.D.N.Y.) (Rule 23(b)(3) class suit with class members objecting to prior settlement), *aff'd per curiam sub nom. Connors v. Chas. Pfizer & Co.*, 450 F.2d 1119 (2d Cir. 1971). *See generally Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1402–16 (1976); Comment, *The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23*, 123 U.Pa.L. Rev. 1217 (1975).

### *Alleged Perpetuation of Illegality*

██ On the assumption that the class was properly certified, appellants argue in the alternative that the settlement agree-

ment cannot be approved because it perpetuates for ten years two "classic group boycotts" in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1—the "College Draft"[3] and the "Compensation Rule."[4] It is true that a settlement that authorizes the continuation of clearly illegal conduct cannot be approved, but a court in approving a settlement should not in effect try the case by deciding unsettled legal questions. *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). Here, as in *Grunin v. International House of Pancakes*, 513 F.2d 114, 124 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), "the alleged illegality of the settlement agreement is not a legal certainty." The challenged practices have not been held to be illegal per se in any previously decided case. The settlement agreement here must be looked at as a whole: it radically modified draft practices;[5] it virtually eliminated option clauses;[6] and it modified the compensation rule, eliminating it altogether after ten years, *see* note 4 *supra*. In light of these facts, the settlement authorizes no future conduct that is clearly illegal.

---

3. College players are "drafted," *i. e.*, chosen by rotating lot by specific teams, and can sign only with the drafting team. No player can become a "free agent," eligible to sign with any team, without "sitting out" a full two years.

4. The "Compensation Rule" requires that any NBA team (Team A) wishing to employ a player after the expiration of his option with his present team (Team B) must compensate Team B by meeting all of its demands. Failure to meet the demands results in the NBA Commissioner's determining the compensation required to be paid by Team A to Team B. Absent such compensation, the players must be boycotted by NBA teams.

 Until 1981, under the settlement, the Compensation Rule remains in effect: from 1981 to 1987 a player's original team (Team B) has a right of first refusal to his services; if it can match the offer of another team (Team A), Team B can retain the player whose option has expired.

5. The settlement agreement eliminated the old draft practice, under which a player who could not contract with the drafting team could never

play for any other team. This practice was held illegal as to football in *Smith v. Pro-Football*, 420 F.Supp. 738 (D.D.C.1976). The instant settlement puts a one-year limit on the drafting team's rights and subjects the player to a second and last one-year draft, after which he is a free agent. Other important modifications to the old system have been made.

6. Option clauses, also known as "reserve clauses," formerly gave the drafting team a perpetual right to the services of the player as long as he remained within the league. Since he could not play for another team unless he was "sold" by the team with the perpetual option on his services, his only alternatives in the event that he could not agree with his team on the price for those services were to go into another line of work or to another league (after "sitting out" one year). Under the settlement, options are limited to one year, regardless whether the player is seeking to change teams in or out of the league.

*Separate Litigation by Appellant*
*Chamberlain*

■ Appellant Chamberlain has pending a separate individual action in federal court in California against the NBA for events occurring after this action was begun.[7] Prosecution of this action was enjoined by Judge Carter below on March 31, 1976, while the settlement negotiations here under consideration were proceeding, "pending the disposition of [this] case." 413 F.Supp. at 91. Chamberlain argues that the district court cannot as a matter of jurisdiction or as a matter of discretion preclude his California litigation. The complete answer to his contention is that it is not properly before this court because it has not yet been litigated below. In approving this settlement, Judge Carter stated:

> Determination of [Chamberlain's contention] is dependent upon the nature of the Chamberlain lawsuit and the extent to which it raises issues distinct and apart from those presented in this litigation. [Citation omitted.] Resolution of that question may require a full hearing and consideration. . . . In any event, this court will give Chamberlain a full opportunity to show that his claims are not so related, and insofar as a convincing showing to that effect is made, he will be entitled to pursue his litigation independently.

72 F.R.D. at 70.

On February 8, 1977, presumably pursuant to this statement, Chamberlain moved in the district court for an order clarifying the application to him of the judgment approving the settlement; he seeks in that motion to show that his claims are not related to those in the instant case. Chamberlain may properly raise his contention in this court only on appeal from the district court's decision on that motion.

Judgment affirmed.

7. Chamberlain left the NBA for the rival American Basketball Association (ABA) and entered into a three-year contract with an ABA team. His old NBA team sought to enjoin him and prevailed in an arbitration proceeding. Chamberlain "sat out" the 1973–74 and following seasons, but expressed interest in returning with another NBA team for the 1975–76 season. His antitrust suit in the United States

District Court for the Central District of California, *Chamberlain v. NBA*, No. 75 Civ.—4258 AAH, alleges that the NBA implemented a boycott against him so as to prevent his contracting with the other NBA team. He claims to be the only NBA player ever to "sit out" his option year with his old team and then to attempt to negotiate with another team.