# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SKILSTAF, INC., on behalf of itself
and all others similarly situated,
            *Plaintiff-Appellant,*

                v.

CVS CAREMARK CORP.; LONGS
DRUGS STORES CORPORATION; THE
KROGER CO.; NEW ALBERTSON'S,
INC.; RITE AID CORPORATION;
SAFEWAY INC.; SUPERVALU INC.;
WALGREEN CO.; WAL-MART STORES
INC.,

            *Defendants-Appellees.*

No. 10-15338

D.C. No.
3:09-cv-02514-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
May 12, 2011—San Francisco, California

Filed February 9, 2012

Before: Betty B. Fletcher and Sidney R. Thomas, Circuit
Judges, and Lee H. Rosenthal, District Judge.*

Opinion by Judge Rosenthal

---

*The Honorable Lee H. Rosenthal, District Judge for the U.S. District
Court for Southern Texas, sitting by designation.

**COUNSEL**

R. Bryan McCulley, McCulley McCluer PLLC, Jacksonville, Florida, for the plaintiff-appellant.

Fred A. Kelly, Jr., Sarah E. Andre, Nixon Peabody LLP, Los Angeles, California, for defendants-appellees New Albertson's. Inc. and Supervalu Inc.

Gregory P. Stone, Michael R. Doyes, Carolyn H. Luedtke, Munger Tolles & Olson LLP, Los Angeles, California, for defendant-appellee Safeway Inc.

Matt Oster, McDermott Will & Emery LLP, Los Angeles, California, for defendant-appellee Walgreen Co.

Laurence A. Weiss, Kristi K. Elder, Hogan Lovells US LLP, Palo Alto, California, for defendant-appellee The Kroger Co.

Steven H. Frankel, Sandra D. Hauser, Sonnenschein Nath & Rosenthal LLP, San Francisco, California, for defendant-appellee Wal-Mart Stores, Inc.

Peter Buscemi, Morgan, Lewis & Bockius LLP, San Francisco, California, for defendant-appellee Rite Aid Corp.

Tami S. Smason, Robert H. Griffith, Page R. Barnes, Foley & Lardner LLP, San Francisco, California, for defendants-appellees CVS Caremark Corp. and Longs Drugs Stores Corp.

---

## OPINION

ROSENTHAL, District Judge:

This is an appeal from the dismissal of a putative class action filed in a California federal district court. The dismissal was based on a Massachusetts federal district court's final judgment certifying a nationwide class and approving a class settlement. A class member who appeared through counsel as an objector in the Massachusetts case filed the present suit in California seeking to represent a nationwide class. The Cali-

fornia complaint sought damages based in large part on the same facts alleged in the Massachusetts case, but against different defendants. The putative class was part of the same class certified in the Massachusetts case.

The California defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The motion was based on a covenant not to sue contained in the settlement and final judgment entered in the Massachusetts case. Under that provision, the class members, including the member who filed the California suit as the named plaintiff, not only released their claims against the Massachusetts defendants but also agreed not to sue "any other person seeking to establish liability based, in whole or in part," on the claims released.

The California defendants argued that the covenant not to sue in the Massachusetts settlement agreement and final judgment precluded the California action. The district court held that the covenant was enforceable against the named plaintiff in the California case, declined to appoint or allow a new class representative because no class had been certified, did not decide whether the covenant was enforceable against the absent members of the putative class, and dismissed. The named plaintiff appealed. We affirm.

## I.   Factual and Procedural Background

### A.   The Massachusetts Class Action and the Filing of the California Suit

The named plaintiff filing the California case is Skilstaf, Inc., an Alabama payroll-service company that self-funds a prescription-drug plan for its employees. Skilstaf was a member of the class the Massachusetts district court certified in *New England Carpenters Health Benefits Fund v. First Data-Bank, Inc. & McKesson Corp.*[1] The class consisted of third-

[1] Civil Action No. 05-11148-PBS (D. Mass.). Some of the decisions in the Massachusetts case are reported at 602 F. Supp. 2d 277 (D. Mass. 2009); 248 F.R.D. 363 (D. Mass. 2008); and 244 F.R.D. 79 (D. Mass. 2007).

party payors—such as insurance companies, self-insured employers like Skilstaf, and union health and benefit plans—that made reimbursements for consumers' purchases of certain prescription drugs. The class also included individual consumers who made percentage co-payments for such drugs and uninsured or underinsured individual consumers who paid the full amounts.

The defendants in the Massachusetts case were McKesson Corporation, a wholesale prescription-drug distributor that also owns pharmacy-related businesses, and First DataBank, a publisher of information about prescription drugs. Wholesalers such as McKesson sell prescription drugs to retail pharmacies and other purchasers. Pharmacies in turn mark up the price in selling to consumers. If the consumers are insured, the insurer's reimbursement payment is typically based on average wholesale prices (AWPs) published by, among others, First DataBank. Third-party payors typically contract to reimburse retail pharmacies at a discount from the published AWP figures. The complaint in the Massachusetts suit alleged that the third-party payors and the individual consumers paid improperly inflated prices for many brand-name prescription drugs based on AWPs published by First DataBank. The plaintiffs in the Massachusetts case alleged that beginning in 2001, McKesson and First DataBank conspired to publish AWPs that used a 25% markup for drugs that historically had only 20% markups. The complaint alleged that this conspiracy increased the amounts the pharmacies charged and the amounts third-party payors had to pay in reimbursements. In addition, individual consumers who had percentage co-pay arrangements with plans that reimbursed the cost of brand-name drugs based on the AWPs, or who were uninsured or underinsured, allegedly overpaid based on the inflated AWPs. The plaintiffs alleged that the inflated AWPs generated a windfall for pharmacies, which inclined them to purchase

drugs from McKesson and to use First DataBank's AWP publications. The plaintiffs alleged a conspiracy to violate RICO.[2]

In March 2008, after three years of litigation, the Massachusetts court presiding over *New England Carpenters* certified the third-party payor and consumer classes described above.[3] The notice of class certification and of the right to opt-out informed the class members that remaining in the suit would prevent them from filing a later lawsuit "related in any way" to the claims against McKesson. The notice did not contain a statement that remaining in the class would prevent a member from later asserting claims arising out of the same facts against an entity other than McKesson.

McKesson ultimately agreed to pay $350 million to settle the claims, consisting of $288 million to the class net of fees and expenses.[4] The district court preliminarily approved the settlement in January 2009. The settlement agreement included a section entitled "Releases" that stated as follows:

> Upon the Effective Date of this Agreement, the Released Parties shall be released and forever discharged by all Releasers from all Released Claims. All Releasers covenant and agree that they shall not hereafter seek to establish liability against any Released Party or *any other person* based, in whole or in part, on any of the Released Claims.

---

[2] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

[3] 248 F.R.D. 363 (D. Mass. 2008).

[4] In March 2009, the *New England Carpenters* court approved a separate settlement with First DataBank for a $2.7 million payment and a rollback of the average wholesale prices allegedly increased through the scheme with McKesson back to the original 20% rate. The National Association of Chain Drug Stores appealed the settlement. The First Circuit affirmed the district court. *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefit Fund*, 582 F.3d 30, 47 (1st Cir. 2009).

(emphasis added).

The settlement agreement defined "Released Parties" as:

(I) McKesson, (ii) its respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, (iii) the respective present and former stockholders, officers, directors, employees, managers, agents, attorneys, partners, and any of the legal representatives of the foregoing, (iv) any future operating entities created and controlled by McKesson, and (v) any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such.

The settlement agreement defined "Released Claims" as:

[A]ny . . . claims . . . that any Releaser who has not timely excluded . . . itself from the . . . Settlement Class . . . has, . . . arising out of any conduct . . . relating to the use of . . . the AWP . . . published or disseminated by First DataBank . . . for any prescription pharmaceuticals, including . . . the allegations contained in or which could have been contained in the Class Action . . . . Released claims do not include claims against any manufacturer regarding pricing or marketing by the manufacturer or regarding AWP manipulation by the manufacturer.

The settlement notice sent to class members in April 2009 set out the covenant not to sue with other provisions of the settlement agreement. But the notice did not emphasize that the members were giving up claims against "any other person" along with the claims against McKesson and affiliated entities. In the section entitled "What claims am I giving up?," the notice quoted the agreement's release clause (including the "any other person" language) and its definition of "Re-

leased Claims." The quoted section was preceded by a "plain language" explanation that stated:

> If the Proposed Settlement is approved, the claims against McKesson will be completely "released." This means that you cannot sue McKesson for money damages or other relief based on the claims in the lawsuit or otherwise arising from its alleged involvement in setting AWP for brand drugs in the relevant period. Settlement Class Members agree to forever release all claims even if they later discover new facts about the claims in the lawsuits. This includes claims whether known or unknown, suspected or unsuspected, contingent or non-contingent. All claims will be released forever whether or not the facts were concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

In the section entitled "What entities am I releasing?," the settlement notice stated that the "Released Entities" included "McKesson Corporation, its parent companies, subsidiaries, and affiliates, and their past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors, successors, and assigns." The settlement notice stated that the "Released Claims do not include claims against any manufacturer," but the notice did not exclude any other category of potential defendants. The settlement notice provided information about how to object but did not extend a second opt-out right to the class members.

In April 2009, after the settlement notice was sent, Skilstaf's counsel wrote to McKesson's counsel asking whether the "or any other person" language was intended to release "class members' claims against any entity other than McKesson, such as retail pharmacies." McKesson's counsel replied in an email dated April 30, 2009 that "[t]he release was framed broadly, as is customary in class action settlements,

but McKesson does not intend the release to extend to claims against retail pharmacies."

In June 2009, Skilstaf filed suit in the Northern District of California against nine retail chain pharmacies: Albertson's, CVS, Kroger, Longs, Rite Aid, Safeway, Supervalu, Walgreens, and Wal-Mart. Skilstaf did not sue McKesson or First DataBank. Skilstaf alleged that these retail pharmacies had either joined in, or profited from, or both, the conspiracy between First DataBank and McKesson to inflate the AWPs for many brand-name prescription drugs. In the California suit, as in the Massachusetts case, Skilstaf asserted a RICO conspiracy. In California, Skilstaf also asserted a common-law claim for unjust enrichment and money had and received, based on the profits the retail pharmacies had obtained as a result of the allegedly inflated AWPs. A substantial part of the California complaint was cut-and-pasted from the Massachusetts complaint.[5]

Meanwhile, back in Massachusetts, Skilstaf filed a "limited" objection to the settlement agreement. Skilstaf's objection asked the court either to clarify that the settlement agreement "does not release any claims against entities other than McKesson, such as retail chain pharmacies" or to strike the "or any other person" provision from the settlement agreement. Skilstaf argued that the "or any other person" language was overbroad, ambiguous, and inconsistent with the settlement notice, which had identified only McKesson and related entities as "Released Parties." Skilstaf also argued that the language was contradicted by the email from McKesson's counsel disclaiming an intent to release entities other than McKesson. Skilstaf attached copies of its letter to McKesson and the April 30, 2009 email response from McKesson's counsel.

---

[5]At least 13 of 26 sections from the "statement of facts" in the California complaint are identical or nearly identical to sections in the Massachusetts complaint.

At the fairness hearing, Skilstaf appeared through counsel to argue its limited objection and alternative motion to strike or clarify. Skilstaf asked the Massachusetts district court to rule that the settlement agreement did not release claims against entities other than McKesson, including the retail chain pharmacies sued in the California case. Skilstaf emphasized that the notices to the class members did not explicitly state that remaining in the class or failing to object to the settlement precluded suing not only McKesson but also "any other person" based on the claims released. As a result, according to Skilstaf, retaining the "any other person" covenant not to sue violated due process.

In response, McKesson urged the district court to approve the settlement as fair and reasonable and consistent with due process. McKesson argued that appointed class counsel, as well as independent counsel for large groups of third-party payor class members, and many absent members, were fully aware of—and had not objected to—the "or any other person" provision in the settlement agreement. To the contrary, because the settlement terms were so generous, class counsel, independent counsel, and some absent class members had expressed enthusiastic support with full awareness of the covenant not to sue. Besides the limited objection from Skilstaf, no one had objected to this provision. Indeed, there were only seven objections filed to any part of the settlement, a .2% objection rate. One of these objections had already been withdrawn by the fairness hearing and three addressed only attorney's fees.

During the fairness hearing, McKesson's counsel stated that "30 percent of [the third-party payor class] . . . actually put in a brief after the Skilstaf objection was filed saying, 'No. We want this settlement to go through.' " Independent counsel representing third-party payor members (other than Skilstaf) told the court that "[t]he fact that this would quiet any and all litigation that they could bring in connection with the violations alleged in the complaint that was brought

before this Court is well known, well understood . . . . What is obvious to me from my communications with many third-party payors is, they're very eager to have this settlement close and collect their share of the $288 million."

McKesson also argued that its position that the "or any other person" provision excluded related claims against other entities was consistent with its counsel's April 30, 2009 email to Skilstaf. The settlement contained a release that extinguished the claims against McKesson and a covenant not to sue that did not extinguish related claims against "any other person" but would preclude suing to hold "any other person" liable for such claims. McKesson argued that the distinction between a release—which extinguished claims—and a covenant not to sue—which precluded suits to pursue claims—was well recognized. McKesson argued that the broad covenant not to sue was a critical part of the settlement because "[i]f all McKesson had was a release, it would remain exposed to claims for indemnification or contribution if plaintiffs filed new lawsuits against third parties based on the claims that McKesson had just settled." McKesson emphasized the generous amount of the settlement and argued that it was willing to agree to pay only because of the protections against future exposure, including against future indemnity claims.

At the fairness hearing, the Massachusetts district judge initially expressed surprise that the settlement agreement contained language barring subsequent related claims against other entities. The judge expressed concern that this point had not been clearly stated in the notice and raised the possibility that some members might have wanted to opt out of a settlement class bound by that provision. The judge emphasized, however, that the settlement was "fabulous" and that it would be a shame "to see it scuttled." The judge noted that Skilstaf's limited and only objection was to the four words—"or any other person"—and not to any aspect of the settlement with McKesson itself. The judge noted that only Skilstaf had objected to the "or any other person" settlement term (or to

any other term besides a few objections to fees); that sending additional notice to the entire class would cause significant delay; and that the only lawsuit filed against entities other than McKesson was the Skilstaf complaint in California, which could well be barred by limitations. The Massachusetts district court denied Skilstaf's limited objection and alternative motion to strike, ruling that any due process concern relating to Skilstaf was best addressed by allowing Skilstaf a second opportunity to opt out from the settlement class.

Skilstaf declined to opt out. Instead, Skilstaf moved for reconsideration of the court's order approving the settlement. Skilstaf then withdrew its objection "contingent on the entry of a final judgment substantially in the form" the parties had negotiated and submitted to the court. The final judgment, as negotiated by the parties and approved by the court, included the following:

> As set forth in the Court's August 3, 2009, Memorandum and Order . . . , the Court declines to strike or clarify the "any other person" language in Paragraph 15 of the Settlement Agreement as objector Skilstaf requested. To the extent otherwise permitted by law, nothing in the foregoing Order precludes Skilstaf from raising the same contentions before another court to determine the enforceability or applicability of the "any other person" language in Paragraph 15 of the Settlement Agreement.

Skilstaf had unsuccessfully sought language stating "[n]otwithstanding the foregoing, nothing herein shall preclude the court in *Skilstaf, Inc. v. CVS Caremark, Corp.*, 09-CV-2514-SI (N.D. Cal.) from determining the enforceability of applicability of the 'any other person' language in Paragraph 15 of the Settlement Agreement," without the prefatory clause "[t]o the extent otherwise permitted by law." Skilstaf agreed to the language that included the prefatory clause. This language was included in the Massachusetts final judgment.

Shortly after the final judgment was entered, another member of the Massachusetts class, Health Management Associates, Inc. ("HMA"), moved for relief from the judgment under Federal Rule of Civil Procedure 60(b) so that it too could pursue claims against retail pharmacies. HMA argued that the final judgment was void under Rule 60(b)(4) for lack of due process because the settlement notice was inadequate. HMA asked the Massachusetts district court to issue a second class-settlement notice with a 90-day opt-out period and to reopen the time for class members to object. The Massachusetts district court denied HMA's motion. Noting that the claims against retail pharmacies were likely barred by limitations, the court found that HMA's failure to object before final judgment was entered was not the result of excusable neglect under Rule 60(b)(1). The Massachusetts court emphasized that the "or any other person" language was in the settlement notice, Skilstaf had objected to it, HMA had almost two months between the filing of Skilstaf's objection and the final court approval of the settlement to object but had not done so, and class counsel and counsel for the independently represented third-party payors had enthusiastically supported the settlement with full knowledge of the covenant not to sue.[6]

---

[6]In its opinion rejecting HMA's Rule 60(b) motion, the Massachusetts district court stated:

> No other [third-party payor] objected to the provision, and there was no [third-party payor] objection to the settlement. Indeed, independently represented [third-party payors] comprising thirty percent of the country's [third-party payor] market filed a brief in support of the settlement following Skilstaf's objection. In response to Skilstaf's objection, McKesson agreed to add language to the proposed order and final judgment, later adopted by the court, that "[t]o the extent otherwise permitted by law, nothing in the foregoing Order precludes Skilstaf from raising the same contentions before another court to determine the enforceability or applicability of the 'any other person' language in Paragraph 15 of the Settlement Agreement." The Court declined to strike or otherwise clarify the "any other person" language. The Court granted Skilstaf ten days to opt out of the settlement, but, with the amended language in place, it chose to withdraw its motion.

The court also rejected HMA's argument that the settlement notice was so inadequate as to violate due process. The court emphasized that the notice quoted the settlement agreement's release clause containing the "or any other person" language, explaining that "[d]ue process can be satisfied where the settlement notice sets forth the release provision verbatim, even if it is a release that extends to claims asserted in other related litigation."

The settlement proceeds were distributed and Skilstaf collected its share of the $288 million. The focus then shifted to the California case that Skilstaf filed as the named plaintiff seeking to represent a nationwide class pursuing the same RICO claims that had been asserted in the Massachusetts case but against different defendants. Instead of suing McKesson and First DataBank, Skilstaf sued retail pharmacies that had contracted with McKesson and had used the First DataBank information. The complaint Skilstaf filed in the Northern District of California alleged that the nine retail-pharmacy defendants violated RICO by conspiring with McKesson and First DataBank to inflate AWPs for the same prescription drugs that were at issue in the Massachusetts case, or, alternatively, that the pharmacies were unjustly enriched by McKesson and First DataBank's conspiracy. Skilstaf sued on behalf of a nationwide class of third-party payors, part of the same class that had been certified in the Massachusetts case.

## B.   The California Court's Decision

The California district court dismissed Skilstaf's claims on the basis that they were precluded by the covenant not to sue that the Massachusetts court had approved as part of the settlement agreement in New England Carpenters and included in the final judgment. The California court granted the requests from both Skilstaf and from the defendants to take judicial notice of court filings from the *New England Carpenters* litigation. The California court considered over 400 pages of transcripts, letters, pleadings, and other documents filed in

the Massachusetts case. The California court rejected the argument that enforcing the covenant not to sue to preclude Skilstaf's suit against the retail pharmacies violated Skilstaf's due process rights. The court noted that Skilstaf's "unique position" in the settlement process evidenced its full knowledge of the "any other person" language. The court emphasized that Skilstaf did not opt out when it was given a second chance to do so after unsuccessfully objecting to the covenant not to sue. Describing Skilstaf's decision to remain in the class and accept its portion of the settlement proceeds as "informed and strategic," the court concluded that "Skilstaf cannot now attempt to circumvent the limitations that attended those benefits."

The court also rejected Skilstaf's request to substitute another class representative because no class had been certified. Finally, the court rejected Skilstaf's request for additional discovery on "the true intent of the parties to the . . . settlement agreement." The court reasoned that the "course of proceedings" in the Massachusetts case made it clear that McKesson had intended to bar all future suits and there was no indication that class counsel had intended something different.

This appeal followed.

## II. The Standard of Review

We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party. *Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010). We also review *de novo* a district court's interpretation of a consent judgment. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).

## III. Discussion

Skilstaf raises three arguments on appeal. First, Skilstaf argues that the district court erred by dismissing the case on

the pleadings without allowing discovery. Skilstaf contends that California law on contract interpretation mandates discovery when a party claims that extrinsic evidence makes a contract ambiguous; when third parties—like the retail-pharmacy defendants—seek to benefit from a contract; or when a party asserts the defense of mutual mistake to the enforcement of a contract. Second, Skilstaf argues that by limiting the due process analysis to the issue of whether the covenant not to sue was enforceable against Skilstaf, the district court failed to provide what the final judgment entered in *New England Carpenters* promised: the right to have the California district court determine the enforceability of the covenant not to sue against all members of the Massachusetts class, not just Skilstaf. And third, Skilstaf argues that even if the district court properly limited its due process analysis to whether the covenant not to sue was enforceable against Skilstaf, due process was not met merely by providing Skilstaf, the objector, with a second opt-out opportunity. Each argument is addressed below.

## A.    The Challenges to the Dismissal Based on California Contract Law[7]

---

[7]The appellees dispute Skilstaf's assertion that California law governs the interpretation of the covenant not to sue. The McKesson settlement agreement contains a choice-of-law provision specifying that California law governs the interpretation of all terms of the agreement. Under that provision, California law governs the interpretation of the covenant not to sue in the settlement agreement. *Cf. Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) ("The interpretation of a settlement agreement is governed by principles of state contract law."). But the covenant not to sue was incorporated by reference into the Massachusetts court's final judgment. That judgment stated, in relevant part: "By operation of this Judgment, the Releasers are forever barred and enjoined from seeking to establish liability based in whole or in part on any of the Released claims, as [set] forth in Paragraph 15 of the Amended Settlement Agreement, which is incorporated by this reference . . . ." Relying on this provision, the appellees contend that the covenant not to sue in the Massachusetts final judgment is independent of the covenant not to sue in the settlement agreement and should be construed under the law governing the interpreta-

**[1]** Under California law, " '[t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting.' " *Miller v. Glen Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006) (per curiam) (quoting *U.S. Cellular Inv. Co. of L.A. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002)). "Because California law recognizes that the words of a written instrument often lack a clear meaning apart from the context in which the words are written, courts may preliminarily consider any extrinsic evidence offered by the parties." *Id.* at 989-90; *see also Dore v. Arnold Worldwide, Inc.*, 139 P.3d 56, 60 (Cal. 2006) ("'[E]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.' " *(quoting Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Cal. Ct. App. 1998))). " 'If the court decides, after consideration of this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible.' " *Miller*, 454 F.3d at 990 (quoting *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 645-46 (Cal. 1968)). If, however, the court decides that the contract is not reasonably susceptible to more than one inter-

---

tion of consent decrees, which is less favorable to Skilstaf. *Compare Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 861 (9th Cir. 2007) ("[I]f the plain language of a consent decree is clear, we need not evaluate any extrinsic evidence to ascertain the true intent of the parties."), *with Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 568-69 (9th Cir. 1988) (stating that, under California law, if a party claims that extrinsic evidence renders a contract ambiguous, "the court must consider extrinsic evidence of possible ambiguity" no matter "how clearly a contract is written"). We need not decide whether the Massachusetts final judgment contains a covenant not to sue to which California law does not apply, because even under California law—the law more favorable to Skilstaf's position—the California district court did not err by dismissing Skilstaf's complaint on the pleadings.

pretation, the court can reject the assertion of ambiguity. *See A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 497 n.2 (9th Cir. 1988) ("If, after considering the evidence, the court determines that the contract is not reasonably susceptible to the interpretation advanced, the parol evidence rule operates to exclude the evidence."); *Cedars–Sinai Med. Ctr. v. Shewry*, 41 Cal. Rptr. 3d 48, 60 (Cal. Ct. App. 2006) ("Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself or from extrinsic evidence of the parties' intent.").

**[2]** There is no ambiguity in the meaning of the "or any other person" provision in the *New England Carpenters* settlement agreement and final judgment. The provision bars a "Releaser" from later seeking to recover from "Released Parties" or from "any other person" on a liability theory "based, in whole or in part," on the "Released Claims" in the *New England Carpenters* case. Skilstaf is clearly a "Releaser" as defined in the Massachusetts settlement agreement. The claims asserted in the California complaint against the retail pharmacies are clearly related to the Released Claims against McKesson, as defined in the settlement agreement. The "or any other person" provision is susceptible to only one interpretation—that the claims Skilstaf asserted in the California suit against the retail pharmacies relating to the Released Claims are barred unless the provision is unenforceable.[8]

Skilstaf relies on extrinsic evidence that was the subject of judicial notice in the California court to argue that the covenant not to sue the Massachusetts court approved in the *New England Carpenters* case is ambiguous.[9] The evidence the

---

[8]Indeed, Skilstaf does not offer an alternative reasonable interpretation of the "any other person" language. Instead, Skilstaf argues that despite the language, the parties did not intend the settlement to bar related subsequent claims against entities other than McKesson.

[9]Although, as a general rule, a district court may not consider materials beyond the pleadings in ruling on a Rule 12(b)(6) motion, one exception

California court considered through judicial notice showed that "30 percent of [the third-party payor class]" had filed a brief urging approval of the settlement agreement and stating that it was understood that the agreement barred claims against third parties, such as the retail pharmacies. During the fairness hearing in the Massachusetts court, counsel for the independently represented third-party payor class stated that many members had communicated their understanding that the covenant not to sue barred claims against third parties as well as claims against McKesson. Counsel emphasized that it was "well understood" that the settlement "would quiet any and all litigation that they could bring in connection with the violations alleged in the complaint." It is undisputed that when Skilstaf objected and moved to strike or clarify, it knew about the "or any other person" provision in the settlement and understood the implications. The evidence also showed that McKesson made it clear to the Massachusetts court that all counsel involved understood the need to bar subsequent suits seeking to impose liability on other entities "based in whole or in part on any of the Released Claims." Otherwise, McKesson would be exposed to the same risks it had settled to avoid, through indemnification demands from third parties

---

to this general rule is that a "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation and internal quotation marks omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). We review a district court's decision to take judicial notice for abuse of discretion. *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995). The district court did not abuse its discretion by taking judicial notice of the filings in the *New England Carpenters* litigation, and the parties do not argue otherwise. There was no dispute about the contents or about the statements from those filings that the district court considered through judicial notice.

sued by class members seeking to impose liability arising from the same events and facts.

The email from McKesson's counsel does not show that the "or any other person" provision is ambiguous. The email addressed only the extent of the release and did not address the covenant not to sue. Admittedly, the email did not draw the distinction made at the fairness hearing by McKesson and in this case by the retail pharmacies between a release on the one hand and a covenant not to sue on the other. But that distinction is recognized.[10] In light of all the evidence from the Massachusetts action presented to the California district court, the informal email response by McKesson's counsel to the question by Skilstaf's counsel did not make the meaning of the covenant not to sue McKesson "or any other person" on the Released Claims ambiguous.

The fact that the Massachusetts district court judge initially expressed surprise and concern over the presence of the "or any other person" provision in the proposed class settlement agreement does not show that those who drafted and signed the agreement did not intend to include such a provision or misunderstood what it meant. The Massachusetts court's orders interpreting and applying this provision are consistent with the California district court's later interpretation and

---

[10] A release is "the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced and its effect is to extinguish the cause of action; hence it may be pleaded as a defense to the action." *Pellett v. Sonotone Corp.*, 160 P.2d 783, 787 (Cal. 1945) (internal citation omitted). By contrast, a covenant not to sue "is not a present abandonment or relinquishment of the right of claim, but merely an agreement not to enforce an existing cause of action." *Id.*; *see also Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1084 (9th Cir. 2007) (discussing the distinction between a release and a covenant not to sue). Though historically a covenant not to sue had to be enforced through a separate breach of contract action, under the modern view a covenant not to sue, like a release, operates as a complete bar to the underlying litigation. *See Adams v. Cavanagh Communities Corp.*, 669 F. Supp. 870, 875-80 (N.D. Ill. 1987).

application. The Massachusetts court declined to strike or clarify the language despite initially expressing concern about it during the fairness hearing. The court approved the settlement agreement and entered final judgment. The court later denied HMA's motion seeking relief from the final judgment.

**[3]** Skilstaf, citing this circuit's unpublished decision in *Atlanta Cancer Care, P.C. v. Amgen, Inc.*, argues that it was reversible error to " 'dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous.' " 359 F. App'x 714, 716 (9th Cir. Nov. 12, 2009) (quoting *A. Kemp Fisheries*, 852 F.2d at 497 n.2). A party's assertion of ambiguity does not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation. *See Hervey v. Mercury Cas. Co.*, 110 Cal. Rptr. 3d 890, 895 (Cal. Ct. App. 2010) ("Although parol evidence may be admissible to determine whether the terms of a contract are ambiguous, it is not admissible if it contradicts a clear and explicit [contract] provision." (citations omitted)). That conclusion can be reached on a motion for summary judgment or, as here, on a motion to dismiss if the evidence can properly be considered under Rule 12(b)(6). *See id.* at 896-97 (holding that the trial court properly dismissed, without leave to amend, the plaintiff's class-action complaint by taking judicial notice of contract terms and concluding they were not reasonably susceptible to the plaintiff's proposed interpretation).[11] The district court properly applied California law by "provisionally receiving" extrinsic evidence and determining that the "any other person" provision in the settlement agreement was not ambiguous and was reasonably susceptible to

---

[11]To the extent that our decisions in *A. Kemp Fisheries* or *Trident* suggest that under California law a trial court may not make this determination in a motion on the pleadings, *Hervey* indicates that California courts can find a contract unambiguous in a motion on the pleadings.

only one interpretation. *See Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 659 (Cal. Ct. App. 2004). The district court did not err in reaching this result and dismissing the case without allowing Skilstaf further discovery to look for additional potential extrinsic evidence.

**[4]** Skilstaf asserts that the defendants are essentially claiming to be third-party beneficiaries of the settlement agreement. Skilstaf's argument that "California law . . . requires that courts allow discovery of extrinsic evidence in cases where . . . a third party seeks to show it was an intended beneficiary of a contract" is unpersuasive. Skilstaf relies on the California appellate court's statement in *Neverkovec v. Fredericks*, 87 Cal. Rptr. 2d 856, 869 (Cal. Ct. App. 1999), that "California contract law requires a third party to show he was an intended beneficiary of a general release and permits extrinsic evidence of the contracting parties' intent and the circumstances in which the agreement was executed." *Neverkovec* does not support Skilstaf's argument that whenever a third party claims it was an intended beneficiary of a contract, the opposing party is entitled to discovery of possible extrinsic evidence on that claim. Instead, *Neverkovec* states that "[r]elease agreements are governed by the generally applicable law of contracts." *Id.* at 865. In the present case, the record, including the evidence subject to judicial notice, made it clear that the retail pharmacies were intended third-party beneficiaries of the settlement agreement to the extent necessary to protect McKesson from facing the same exposure through claims for indemnity that it had paid generously in settlement to avoid. Under California law, Skilstaf was not entitled to discovery of additional extrinsic evidence because the retail pharmacies asserted that the settlement agreement approved in the Massachusetts court protected them from the claims Skilstaf asserted in the California court.

Finally, Skilstaf argues that "[d]iscovery of extrinsic evidence is also required under California law when a party asserts the defense of mutual mistake." Skilstaf relies on the

California Supreme Court's statement in *Hess v. Ford Motor Co.*, that to determine whether a contract clause was included by mistake, "[e]xtrinsic evidence is necessary because the court must divine the true intentions of the contracting parties and determine whether the written agreement accurately represents those intentions." 41 P.3d 46, 52 (Cal. 2002). The *Hess* court did not hold that a party is entitled to discovery any or every time it asserts mutual mistake as a contract defense. Instead, the court stated that parol evidence may be required to determine the defense on the merits. *Id.* at 51-53.

**[5]** In the present case, the district court considered the evidence the parties presented and concluded that the covenant not to sue was intended to bar claims against third parties, such as the retail pharmacies, that were related to the claims released in the *New England Carpenters* case. The evidence amply supports that conclusion. The district court did not err in its application of California law.

## B. The Enforceability of the Covenant Not to Sue against Skilstaf

We agree with the district court that enforcing the *New England Carpenters* judgment and settlement agreement against Skilstaf, including the covenant not to sue, does not violate Skilstaf's due process rights. The California district court did not err in finding that Skilstaf had full notice of the "or any other person" provision when it objected and later rejected the second opt-out opportunity. *See In re Gen. Am. Life. Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 804 (8th Cir. 2004) (stating, in the context of a class action, that "[t]he most important element of due process is adequate notice"); *see also Hecht v. United Collection Bureau*, No. 3:10cv1213 (MRK), 2011 WL 1134245, at *6-7 (D. Conn. Mar. 25, 2011) (finding, on a motion to dismiss, that a class action settlement agreement's broad release barred the plaintiff's claim over a due process objection in part because the plaintiff had an

opportunity to opt out after notice of the provision it later objected to).

Relying on *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004), Skilstaf argues that due process is not satisfied when a class action defendant provides only objectors—rather than the entire class—with a second opt-out opportunity. In *Churchill*, we considered whether an objecting class member who had an opt-out opportunity could appeal the district court's denial of its objection under the Supreme Court's decision in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). In *Devlin*, the Supreme Court considered whether a non-named, absent class member who objects to a settlement, but who cannot opt out because the class action was certified under Rule 23(b)(1), must intervene to appeal an objection overruled by the district court. The Supreme Court held that intervention is not required. The Court stated:

> What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court. Particularly in light of the fact that petitioner had no ability to opt out of the settlement, *see* Fed. Rule Civ. Proc. 23(b)(1), appealing the approval of the settlement is petitioner's only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might find legally inadequate.

*Id.* at 10-11.

In *Churchill*, we addressed whether an objecting class member who did have an opt-out right could remain in the class and still appeal. Rejecting the argument that because an objecting class member could opt out, it had no basis to appeal, we stated:

> [In *Devlin*], the Court relied on the fact that Devlin was unable to opt out of the Rule 23(b)(1) class. Here, by contrast, the . . . objectors may exclude themselves from the settlement and thus preserve their right to seek relief from [the defendant]. Yet this ostensible independence is belied by an essential impracticability. Because each objector's claim is too small to justify individual litigation, a class action is the only feasible means of obtaining relief. By terminating all class actions relating to the dishwasher recall, the settlement will effectively bind the objectors. They therefore occupy precisely the status the *Devlin* Court sought to protect.

361 F.3d at 572.

Skilstaf argues that just as we rejected the argument in *Churchill* "that the right to opt-out foreclosed the ability of the objector . . . to appeal the settlement, so too [we] should reject the District Court's reasoning that the second opt-out opportunity only afforded [to] Skilstaf forecloses it from protecting the class in this case." Skilstaf contends that if a class-action defendant can provide a second opt-out opportunity only to the objector, no class settlement will be subject to "proper review." If the objecting class member opts out, it loses its right to appeal the settlement and protect the due process rights of absent class members; if the objecting class member remains in the class and appeals, "it will be subject to the . . . flawed reasoning that the class member is bound by the settlement and cannot challenge its terms on behalf of the class because the class member was afforded due process through the second opt-out opportunity."

**[6]** Skilstaf's argument proves too much. The California court's ruling that the *New England Carpenters* settlement agreement is enforceable against Skilstaf did not address whether enforcing that agreement against the nonnamed members of the putative class of third-party payors Skilstaf sought to represent would violate their due process rights. Because the unnamed members of this putative class are not bound by the decision to dismiss Skilstaf's claims, *see Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2381 (2011) (stating that a class action "with binding effect on nonparties[ ] can come about in federal courts in just one way—through the procedure set out in Rule 23"), any ability they have to challenge the applicability or enforceability of the covenant not to sue— if and when they sue the retail pharmacies—is unaffected. The district court's ruling did not create the risk that the Massachusetts class settlement will escape "proper review," as Skilstaf contends.

## C.   The Challenge to the Dismissal Based on the Provision in the Massachusetts Final Judgment Allowing Skilstaf to Raise its Contentions Before Another Court

Skilstaf argues that the California district court erred by limiting its due process analysis to whether the covenant not to sue was enforceable against Skilstaf. Skilstaf contends that the provision it negotiated in the Massachusetts final judgment required the California district court to determine the enforceability of the covenant not to sue against all the third-party payors who had been members of the Massachusetts certified class and who made up the putative class Skilstaf sought to represent in California. That is so, Skilstaf asserts, because one of its contentions before the Massachusetts court was that the covenant not to sue was unenforceable against the *New England Carpenters* class, not just against Skilstaf.

**[7]** The Massachusetts court's final judgment did not require the California court to consider whether the covenant

not to sue was enforceable against the nonnamed members of the putative uncertified class, who were in a different position from Skilstaf because they did not object, appear in the Massachusetts case, or receive and reject a second opt-out opportunity. The Massachusetts court's final judgment states that Skilstaf could challenge the covenant not to sue in another court. The California district court considered Skilstaf's due process challenge to the covenant not to sue. Once the California district court determined that the covenant not to sue was enforceable against Skilstaf, the Massachusetts judgment did not require the district court to decide more. Before the California district court, Skilstaf argued that, even if the covenant not to sue was enforceable against it, the district court should allow Skilstaf an opportunity to substitute another class representative. The district court refused this request after dismissing Skilstaf's claims because no class had been certified. In this appeal, Skilstaf does not challenge the district court's refusal to substitute another class representative. As noted, the court's ruling as to Skilstaf's claims is not binding on the nonnamed members of the putative class Skilstaf sought to represent.

The provision in the Massachusetts judgment Skilstaf negotiated with McKesson and with the *New England Carpenters* class counsel supports the result the California court reached. The provision states that Skilstaf may raise before another court the contentions it raised in the Massachusetts court "[t]o the extent otherwise permitted by law." This includes the law of issue preclusion. Skilstaf was not "permitted by law" to relitigate issues that had already been decided in Massachusetts and to which issue preclusion applied.

"Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a

party or in privity with a party at the first proceeding.' " *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005), *abrogated by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008)). We found these requirements met in *Reyn's Pasta*, for reasons that are instructive here.

In *Reyn's Pasta*, class members who appeared through counsel and objected during a class-action settlement hearing in the Eastern District of New York attempted to collaterally attack the release in the settlement approved in that case in a subsequent suit filed in the Northern District of California. *Id.* at 745. The collateral attack was based on the same objections raised at the settlement fairness hearing in the Eastern District New York. *Id.* at 746 n.6. In *Reyn's Pasta*, the plaintiffs sued Visa, MasterCard, and their member banks in the Northern District of California, alleging that they had violated the federal antitrust statutes by fixing the "interchange rate." *Id.* at 743-44. This rate is the difference between the price paid by a Visa or MasterCard member bank for title to goods purchased by consumers and the price paid by consumers. *Id.* at 744 n.3. The *Reyn's Pasta* plaintiffs were also class members in a separate action brought by Wal-Mart and other retailers in the Eastern District of New York against Visa and Master-Card, *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y.) (the "*Wal-Mart* class action"). *Reyn's Pasta*, 442 F.3d at 743-44. In the *Wal-Mart* class-action suit, the complaint alleged that Visa and MasterCard obtained excessive "discount fees"—the difference between the price charged to a consumer and the price Visa or Master-Card paid the merchant—"by 'tying' their debit cards to their credit cards and conspiring to monopolize the debit-card market." *Id.* at 744 n.3, 745. The *Wal-Mart* suit settled. The settlement agreements the court in the Eastern District of New York approved included releases "purport[ing] to absolve Visa, MasterCard, and the [member banks] of all antitrust liability arising out of conduct . . . related to the claims asserted in the *Wal-Mart* class action." *Id.* at 745. The *Reyn's Pasta*

plaintiffs appeared at the settlement fairness hearing in the Eastern District of New York and litigated whether the *Wal-Mart* class-action settlement released the price-fixing claims they had alleged in the Northern District of California. *Id.* at 746 n.6. The New York district court "expressly determined" that the *Wal-Mart* settlement released these claims. *Id.* at 745.

After the Eastern District of New York entered this ruling and approved the settlement agreement in the *Wal-Mart* class action, the defendants in the California action argued that the release in the settlement barred that suit. *Id.* The California district court agreed and dismissed. *Id.* Affirming the district court, we explained that the elements of issue preclusion—issue identity, party identity or privity, and final judgment—were met: in the *Wal-Mart* class action, the court had ruled that the release in the settlement agreement applied to the price-fixing claims, the *Reyn's Pasta* plaintiffs were parties to this decision "by virtue of their membership in the class and appearance through counsel at the fairness hearing," and the New York district court's approval of the settlement was a final judgment on the merits. *Id.* at 746-47. We also rejected the plaintiffs' argument "against application of issue preclusion solely from the maxim that a court rendering a judgment cannot predetermine its res judicata effects." *Id.* at 747. We found the maxim inapplicable because the plaintiffs "brought about the *Wal-Mart* [court's] predetermination of their judgment's preclusive effects by raising the issue in the *Wal-Mart* litigation as opposed to waiting to attack those judgments in the Northern District of California." *Id.*

This case is similar to *Reyn's Pasta*. Skilstaf was a class member in the Massachusetts action and, through counsel, objected to the covenant not to sue in the settlement agreement. Skilstaf's objection clearly raised a due process challenge. Skilstaf argued that "you don't notice [the covenant not to sue] when you read the documents" because it was "buried in the release section of the notice" and was not placed in a separate section. Disagreeing that the settlement notice was

inadequate, McKesson argued that the notice "was quite clear" because it quoted the covenant not to sue verbatim. Counsel for the third-party payor class argued that the absent members of that class—the same entities who were members of the putative class Skilstaf sought to represent in California—were fully aware of the covenant not to sue and expressed overwhelming support for the settlement.

Explaining that it did not have the authority to modify the settlement agreement but only to accept or reject it, the Massachusetts district court rejected Skilstaf's preferred solution—striking the "or any other person" language—and raised two possible alternatives. The first was requiring McKesson to send a new settlement notice providing a second opt-out opportunity to all class members, and the second was requiring McKesson to provide a second opt-out opportunity to Skilstaf. The district court rejected the first alternative. It explained that the settlement agreement had been "pretty widely publicized," that no other class member objected to the "any other person" provision in the one-month period since Skilstaf filed its objection, and that requiring McKesson to send a new settlement notice to the entire class would delay and endanger "a fabulous settlement." The district court resolved the due process concern raised by Skilstaf's objection by giving Skilstaf a second opt-out opportunity. Skilstaf declined the opportunity, withdrew its motion to reconsider, and did not appeal. The district judge approved the settlement and entered final judgment.

[8] The elements of issue preclusion are met. First, the Massachusetts district court ruled on Skilstaf's due process challenge to the covenant not to sue. Skilstaf directly challenged the adequacy of the settlement notice at the fairness hearing in Massachusetts. The parties—Skilstaf, McKesson, class counsel, and independent counsel for the third-party payor class—fully presented their views to the district court. The Massachusetts court resolved the due process challenge by overruling Skilstaf's objection and denying its motion to

strike, by affording Skilstaf a second opt-out opportunity, and by approving the settlement agreement.[12] In approving the *New England Carpenters* settlement as "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2), the Massachusetts court "necessarily had to adjudicate the objections [Skilstaf] raised." *Reyn's Pasta*, 442 F.3d at 746. Second, the Massachusetts court's "approval of the settlement constituted a final judgment on the merits." *Id.* And third, Skilstaf was a party to the "proceeding by virtue of [its] membership in the [third-party payor] class and appearance through counsel at the fairness hearing." *Id.* at 747.

Skilstaf argues that it should not be precluded from relitigating its due process challenge in California because the *New England Carpenters* final judgment included the negotiated term allowing Skilstaf to challenge the enforceability of the covenant not to sue before another court. Skilstaf contends that in exchange for this ability to raise the challenge in the district court in which its suit against the retail pharmacies was pending, it agreed to withdraw its objection to the covenant not to sue and waived its right to appeal the Massachusetts district court's rejection of the objection and denial of the motion to strike to the First Circuit Court of Appeals. Contrary to Skilstaf's assertion, the Massachusetts final judgment does not limit the preclusive effects of the Massachusetts district court's rulings in this fashion. The provision states that "[t]o the extent otherwise permitted by law, nothing in the [Massachusetts court's order denying Skilstaf's objection to the settlement agreement] precludes Skilstaf from raising the same contentions before another court to determine the enforceability or applicability of the 'any other person' language in Paragraph 15 of the Settlement Agreement." If issue preclusion bars Skilstaf's due process challenge, Skilstaf

---

[12]The Massachusetts district court later expressly held that the settlement notice satisfied due process in its order denying HMA's Rule 60(b) motion. The court did not do so in ruling on Skilstaf's motion.

is not "otherwise permitted by law" to raise this "same contention[ ] before another court."

Skilstaf's decision to withdraw its motion asking the district court in Massachusetts to reconsider its denial of Skilstaf's objection to the covenant not to sue in the settlement agreement and to forgo an appeal from the settlement approval and final judgment does not permit Skilstaf to collaterally attack the enforceability of the covenant against it in California. After the Massachusetts district court denied Skilstaf's objection in a written order, Skilstaf filed a motion for reconsideration, reurging its argument that the class members did not receive adequate notice of the covenant not to sue. Skilstaf argued that the "proposed 'solution' of allowing only Skilstaf an opportunity to opt out [was] meaningless, as all class members have the due process right to opt-out after receiving adequate notice." Skilstaf withdrew its objection and its motion for reconsideration after it negotiated the language included in the final judgment. Skilstaf then took its share of the settlement proceeds, as did the other members of the third-party payor class. The Massachusetts court's ruling rejecting Skilstaf's objection over its due process argument, based on the facts specific to Skilstaf's role in the litigation, remained in place.

Skilstaf relies on *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010), to argue that broad collateral review was required in California. In *Hesse*, we held that "a broad release of claims in a nationwide settlement agreement between Sprint and its customers" in a Kansas class action did not bar a Washington class action in part because the Washington plaintiffs—members of the Kansas class—"were not adequately represented" in Kansas. *Id.* at 584. Rejecting Sprint's argument that inquiring "into the adequacy of representation" in the Kansas action would be "an impermissible collateral attack on the Kansas court's judgment," *id.* at 587, we explained that the Kansas court "did not make an explicit finding" that the Kansas plaintiff was an adequate representa-

tive for the claims asserted in Washington, *id.* at 588. "Because that question was not addressed with any specificity by the Kansas court," we concluded that it was "a proper subject for collateral review." *Id.*

Unlike the Kansas plaintiff in *Hesse*, Skilstaf appeared through counsel at the Massachusetts fairness hearing, objected to the settlement agreement insofar as it contained the covenant not to sue, specifically challenged the adequacy of the notice with respect to the covenant, and obtained a specific ruling that given the absence of any other objection, given the evidence of widespread knowledge of the covenant, and given class counsel's endorsement of the settlement with full knowledge of the covenant, due process was satisfied by affording Skilstaf a second opt-out opportunity. Skilstaf withdrew its objection to the covenant not to sue and its motion for reconsideration in exchange for language in the final judgment that, as we discussed, did not limit the preclusive effect of issues litigated and decided in the Massachusetts action. Skilstaf does "not get a second bite at the apple to challenge collaterally the same issue" in California. *Reyn's Pasta*, 442 F.3d at 747.[13]

---

[13] *See In re Diet Drugs*, 431 F.3d 141, 146 (3d Cir. 2005) ("Class members are not . . . entitled to unlimited attacks on the class settlement. Once a court has decided that the due process protections did occur for a particular class member or group of class members, the issue may not be relitigated."); *id.* ("No collateral review is available when class members have had a full and fair hearing and have generally had their procedural rights protected during the approval of the Settlement Agreement. Collateral review is only available when class members are raising an issue that was not properly considered by the District Court at an earlier stage in the litigation."); *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 33 (1st Cir. 1991) ("The Delaware courts, affording all the prophylaxis which the Due Process Clause commands, adjudicated the question of whether appellants had a right, or should have been allowed, to opt out of the settlement. If, having objected and been overruled, appellants were still dissatisfied with the Delaware judgment, their recourse was to the United States Supreme Court by means of certiorari, not to the lower federal courts in the vain pursuit of back-door relief."); *cf. Hansberry v. Lee*, 311

**[9]** The Massachusetts court's final judgment did not entitle Skilstaf to more than the California court provided. Skilstaf's arguments provide no basis to reverse. If a member of the putative class files another suit against the retail pharmacies on its own behalf or as the named plaintiff on behalf of a class, the question of the enforceability of the covenant not to sue as to such a party and claims will then be before the court. The California district court did not address that question, and we express no view on its resolution.

## IV.  Conclusion

The district court's decision to dismiss is affirmed.

---

U.S. 32, 42-43 (1940) ("It is familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment . . . where they actually participate in the conduct of the litigation in which members of the class are present as parties . . . ."); *Dosier v. Miami Valley Broad. Corp.*, 656 F.2d 1295, 1299 (9th Cir. 1981) ("Although Dosier was not a named party in the *Wydermyer* class action, he was represented during the settlement conference by his own attorney. Dosier cannot now complain that the named plaintiff did not adequately represent his interests. He is bound by the settlement because of his own participation in the suit."); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 296, 298 (S.D.N.Y. 1971) ("The indisputable fact is that these six plaintiffs were fully and fairly represented by their attorney, Mr. Paul Scanlon, at the hearing held in New York on March 25, 1970, to determine whether or not the proposed settlement should be approved. . . . Since these plaintiffs, through their counsel, actually participated in the hearing before Judge Wyatt, they are bound by the judgment in the Virginia Class Action, subject of course, to attack by direct appeal to the appropriate court.").