NOT FOR PUBLICATION

FILED

MAY 06 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   12-1363-MoMkTa |
| KARYKEION, INC., | Bk. No.   08-bk-17254-MT |
| Debtor. | Adv. No.   12-ap-01047-MT |

| | |
|---|---|
| MITCHELL RUBIN, in his capacity as President of the Debtor and Debtor in Possession, on behalf of KARYKEION, INC., a California corporation, Debtor, and on Behalf of Beneficial Equity Holder Edward Rubin, M.D., | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| CHHP HOLDINGS II, LLC; CALIFORNIA DEPARTMENT OF PUBLIC HEALTH; UNITED STATES OF AMERICA, on behalf of the Department of Health & Human Services, and its designated component, the Centers for Medicare and Medicaid, | |
| Appellees. | |

Argued and Submitted on February 21, 2013
at Pasadena, California

Filed - May 6, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before: MONTALI,[2] MARKELL and TAYLOR, Bankruptcy Judges.

A chapter 11[3] debtor sold a hospital pursuant to an asset purchase agreement approved by the bankruptcy court. The debtor's president thereafter sued the purchaser and others, alleging that the purchaser had assumed liability for the debtor's unpaid payroll taxes. The purchaser (joined by other defendants) moved to dismiss the complaint for failure to state a claim, arguing that it was not liable for these taxes under the unambiguous terms of the asset purchase agreement. The bankruptcy court agreed and dismissed the complaint with prejudice. We AFFIRM.

## I. FACTS

Karykeion, Inc. ("Debtor") filed its chapter 11 petition on September 22, 2008. Appellant Mitchell Rubin ("Plaintiff") is the president of Debtor. As of the petition date, Debtor owed the Internal Revenue Service ("IRS") approximately $3,945,000 for unpaid payroll taxes (the "IRS Taxes").

Debtor operated Community Hospital of Huntington Park, California (the "Hospital") until it was sold to appellee CHHP Holdings II, LLC ("CHHP") pursuant to an Asset Purchase Agreement ("APA"). The bankruptcy court approved the APA in an order authorizing the sale of the Hospital and related assets entered

---

[2] Hon. Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

on March 23, 2010.  The transfer of the Hospital was embodied in the APA and an Interim Management Agreement ("IMA").

The APA provided that CHHP, at its sole discretion, would assume specific executory contract obligations:

> 2.3 *Assigned and Subleased Contracts.*  Subject to the terms set forth in this Agreement and the General Assignment, within thirty (30) days of the Closing Date and effective as of the Cut-Off Time, Seller shall (a) assign to Purchaser, and Purchaser shall assume, the executory contractual obligations of Seller under the specific Contracts that Purchaser elects, in the exercise of its sole discretion, to assume on the Closing Date (the "*Assigned Contracts*"), all of which shall be expressly identified and included on Schedule 2.3 . . . . No Contract shall be considered an Assigned Contract unless it is expressly identified and included on Schedule 2.3, at the election of Purchaser (in its sole discretion) as provided herein.

> * * *

> 3.4 *Assumed Obligations.*  Subject to the terms set forth in this Agreement, at Closing, Purchaser shall assume, pay, perform and discharge each of the following (the "*Assumed Obligations"*):

>> (a) all executory contractual obligations under the Assigned Contracts which arise after the Closing Date, plus any Cure Payments paid by Purchaser on the Closing Date in connection with the assignment of the Assigned Contracts Note (which Cure Payments shall be offset against the Purchaser Note pursuant to Section 3.2(d))[.]

APA at pages 14-15 and 16.  Schedule 2.3 of the APA, in turn, has an entry identifying "Internal Revenue Service - PR" as a "vendor," and "agency" as the "department or service."

The APA also identified liabilities which would be retained by Debtor, including taxes assessed prior to execution of the agreement:

3.5 *Retained Liabilities.* Seller [Debtor] shall retain, pay, perform and discharge all Liabilities arising out of or relating to the ownership or operation of the Hospital, Mission Hospital, the Business and the Acquired Assets on or prior to the Closing Date, other than Liabilities that are expressly included among the Assumed Obligations (the "*Retained Liabilities*"), including all Liabilities arising out of or relating to any of the following . . . . . .

(I) any Taxes assessed as a result of Seller's ownership or operation of the Hospital, Mission Hospital, the Business or the Acquired Assets on or prior to this Agreement; . . . .

APA at pages 16-17 (emphasis added.)

Approximately two years after the bankruptcy court approved the sale and APA, Plaintiff -- purportedly acting on behalf of Debtor -- sued CHHP, the U.S. Department of Health and Human Services and its designated operating division, the Centers for Medicare & Medicaid Services (collectively, "HHS"), as well as various state government departments and agencies. Plaintiff sought a declaratory judgment that (among other things) CHHP is liable (as successor and by contract) for the IRS Taxes; he also alleged that no transfer of the Hospital had occurred because form CMS 855 (i.e., a Change of Ownership ("CHOW") form) had not been executed. He also asserted claims for conversion, misrepresentation, specific performance, injunctive relief, and accounting; all of these claims were based on the premise that CHHP was liable for the IRS Taxes.

CHHP and HHS each filed motions to dismiss (with HHS also joining CHHP's motion) Plaintiff's amended complaint ("Amended Complaint"), contending that the APA unambiguously did not impose liability for the IRS Taxes on CHHP, that Plaintiff lacked standing to bring the claims on behalf of Debtor, that the court

- 4 -

lacked jurisdiction to determine Medicare-related issues, and that only the IRS can assert successor liability with respect to tax debts.  Only one of these issues is the subject of this appeal:  whether the APA imposed liability for the IRS Taxes on CHHP.

Prior to the hearing on the motions to dismiss, the court issued a tentative ruling indicating its intent to grant them. The court concluded that no ambiguity existed in the APA, and that CHHP did not assume liability for the IRS Taxes:

The relevant provisions of the APA must be read together. California Civil Code § 1641. . . . [W]hether the contract is ambiguous can be decided from the language of the contract as a matter of law. *In re Ankeny*, 184 B.R. 64, 70 (9th Cir. BAP 1995). . . .

The relevant provisions of the APA then provide a roadmap as to why CHHP did not agree to assume the payroll tax liability. Paragraph 2.3 provides that no contract "shall be considered an Assigned Contract unless it is expressly identified and included on Schedule 2.3, at the election of the Purchaser (in its sole discretion) as provided herein."  Schedule 2.3 the [sic] includes an entry "Internal Revenue Service-PR." Paragraph 3.4 then provides that "Purchaser shall assume, pay, perform and discharge each of the following (the "*Assumed Obligations*"):

(a) all executory contractual obligations under the Assigned Contracts which arise after the Closing date, plus any Cure Payments paid by Purchaser on the Closing date in connection with the assignment of the assigned contracts[.]

Paragraph 3.5 then describes the "Retained Liabilities" stating that the Seller [i.e., Debtor] will retain "(i) any taxes assessed as a result of Seller's ownership or operation of the Hospital, Mission Hospital, the Business or the acquitted Assets on or prior to this Agreement[.]"

The Court agrees with CHHP that when read together, the relevant provisions of the APA make it clear that CHHP is not responsible for the payroll taxes.  Plaintiff relies heavily on the "Internal Revenue Service-PR" entry on Schedule 2.3, and argues that this causes the

- 5 -

> entire contract to be ambiguous. This ignores the fact that debtor's obligation to the IRS for pre-Closing date taxes was not a "contract." Paragraph 2.3 of the APA also gave CHHP sole discretion as to what contracts it would assume, and there is no indication or allegation it assumed this one. Paragraph 3.4 of the APA provides that [D]ebtor would assume the cost on any contract CHHP did assume. Most importantly, paragraph 3.5(i) of the APA specifically provides for the liability for all taxes related to pre-closing operations was to remain with [D]ebtor.
>
> The debtor's argument simply ignores plain language of the APA and reads an ambiguity into the APA where there is none.

Notice of Tentative Ruling re Motion to Dismiss Adversary Complaint at pages 6-7.

At the hearing, the court adhered to its tentative ruling, calling the argument of Plaintiff "preposterous." Transcript of Hearing held on June 20, 2012, at 24:7. It dismissed the action with prejudice, not wanting "to run up costs further. They've been unnecessarily run up in this case as it is with issues that didn't have merit." Id. at 24:5:11. The court thereafter filed its tentative ruling as its decision, and entered its order dismissing the amended complaint and adversary proceeding on July 6, 2012.

Plaintiff filed a timely notice of appeal on July 13, 2012.

## II. ISSUE

Did the bankruptcy court err in dismissing the Amended Complaint without leave to amend?

## III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(N) and § 1334. Bankruptcy courts have core

- 6 -

jurisdiction to approve sales of estate property under 28 U.S.C. § 157(b)(2)(N) ("[C]ore proceedings include . .. orders approving the sale of property.").  They have corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a). As this adversary proceeding turned on the interpretation of agreements approved by and incorporated into a section 363 sale order, it was a core matter.[4]  Jamaica Shipping Co., Ltd. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.), 458 F.3d 92, 95 (2d Cir. 2006) (holding that an adversary action which turned on the terms of a sale order was a core proceeding); see also HHI FormTech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC), 439 B.R. 352 (Bankr. D. Del. 2010) ("[e]nforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction"), citing Travelers Indem. Co. v. Bailey, 557 U.S. 137, 138 (2009) (holding that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders").

We have jurisdiction under 28 U.S.C. § 158, as the order dismissing the adversary proceeding with prejudice is a final decision of the bankruptcy court.

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's order granting a motion to dismiss for failure to state a claim under Federal Rule

---

[4] Plaintiff conceded the core nature of the lawsuit in paragraph 12 of his Amended Complaint.

- 7 -

of Civil Procedure 12(b)(6) (incorporated by Rule 7012). Movsesian v. Victoria Versicherung AG, 670 F.3d 1067, 1071 (9th Cir. 2012)(en banc); N. Slope Borough v. Rogstad (In re Rogstad), 126 F.3d 1224, 1228 (9th Cir. 1997).  We also review de novo the bankruptcy court's dismissal of a complaint without leave to amend.  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005) ("The district court's dismissal of a complaint without leave to amend is reviewed de novo and is improper unless it is clear that the complaint could not be saved by any amendment.").  Under de novo review, we look at the matter anew, as if it had not been heard before, and as if no decision had been rendered previously, giving no deference to the bankruptcy court's determinations.  Freeman v. DirecTV, Inc., 457 F.3d 1001, 1004 (9th Cir. 2006).

## V. DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A court should assume the veracity of the factual allegations "and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679.  This plausibility standard is not a probability requirement, but does ask for more than mere possibility; if a complaint pleads facts "merely consistent with" a theory of liability, it falls short of "the line between possibility and plausibility." Iqbal, 129 U.S. at 678 (quoting

- 8 -

Twombly, 550 U.S. at 557).

Here, the allegations of Plaintiff's complaint that the APA imposed liability for payment of the IRS taxes on CHHP have not crossed the line from merely possible to plausible. Rather, as discussed below, Plaintiff concocts an ambiguity where none exists. The bankruptcy court consequently did not err in dismissing the Amended Complaint. See Twombly, 550 U.S. at 570.

This appeal centers on the interpretation of the APA. Plaintiff contends that, at a minimum, the APA's language identifying "Internal Revenue Service -- PR" as an assumed contract renders it ambiguous, thus requiring the introduction of extrinsic evidence to aid in its interpretation. Plaintiff therefore argues that the bankruptcy court erred by not giving him an opportunity to conduct discovery and amend his complaint again.

Under Ninth Circuit authority, a party's assertion of ambiguity of contract does not require a court to allow additional opportunities to find or present extrinsic evidence if the court has concluded that the language is *reasonably* susceptible to only one interpretation. Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1017-18 (9th Cir. 2012) (applying California law) (plaintiff was not entitled to discovery of additional extrinsic evidence to prove ambiguity of settlement agreement reached in prior action). Such a conclusion can be reached in the context of a Rule 12(b)(6) motion to dismiss. Id.

Here, the bankruptcy court held that the APA was not ambiguous and was reasonably susceptible to only one interpretation. We agree. Paragraph 3.4 of the APA clearly

imposes liability for the IRS Taxes on the Debtor as the seller: "[Debtor] shall retain, pay, perform and discharge all Liabilities arising out of or relating to the ownership or operation of the Hospital . . . including all Liabilities arising out of or relating to . . . any Taxes assessed as a result of Seller's ownership or operation of the Hospital, Mission Hospital, the Business or the Acquired Assets on or prior to this Agreement[.]" Plaintiff's argument that Schedule 2.3 somehow renders this clear and explicit provision ambiguous is unavailing. Skilstaf, 669 F.3d at 1017, quoting Hervey v. Mercury Cas. Co., 185 Cal. App. 4th 954, 961, 110 Cal. Rptr. 3d 890, 895 (2010) ("Although parol evidence may be admissible to determine whether the terms of a contract are ambiguous, it is not admissible if it contradicts a clear and explicit [contract] provision.").

While Paragraph 2.3 provides that executory contractual obligations identified in Schedule 2.3 would be assumed by CHHP, and "Internal Revenue Service - PR" is identified on Schedule 2.3, Paragraph 3.4 provides that CHHP would pay all such executory contractual obligations "which arise after the Closing Date" plus any cure amounts which would be deducted from the purchase price. The IRS Taxes arose before the Closing Date, and the IRS Taxes did not arise from an executory contract which can be assigned and assumed. A contract is executory, and therefore assumable under section 365, only if one party's failure to perform its obligation would excuse the other party's performance. Zurich Am. Ins. Co v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.), 503 F.3d 933, 941 (9th Cir. 2007),

citing Commercial Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.), 976 F.2d 1269, 1272 (9th Cir. 1992); Pac. Express, Inc. v. Teknekron Infoswitch Corp. (In re Pac. Express, Inc.), 780 F.2d 1482, 1487 (9th Cir. 1986) (quoting Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)). The IRS owed no duty to perform vis-a-vis the IRS Taxes; it had no contractual obligation that could be breached. The IRS Taxes did not arise because of a contract with the IRS; they are statutory tax obligations. In any event, even if CHHP did "cure" any purported default, that amount would have to be credited against the purchase price.

As all of the remaining causes of action in the Amended Complaint (i.e., the first claim for declaratory relief, the second claim for conversion, the third claim for misrepresentation, and the fourth claim for misrepresentation)[5] are dependent on an interpretation of the APA that both the bankruptcy court and we reject, the bankruptcy court did not err in dismissing the Amended Complaint. Furthermore, given that the APA on its face is not susceptible to the interpretation urged by Plaintiff, no ambiguity exists and no extrinsic evidence is required. Consequently, the bankruptcy court did not err in dismissing the adversary proceeding with prejudice.

---

[5] In his Opening Brief (page 3), Plaintiff formally abandoned the fifth cause of action for injunctive relief. In addition, Plaintiff did not address the bankruptcy court's dismissal of his sixth claim (for accounting) in his opening brief or his reply brief. The bankruptcy court held that the claim was barred under the doctrine of issue or claim preclusion, and Plaintiff did not identify or discuss any error in that holding. As such, the sixth claim is deemed abandoned. See Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (9th Cir. 1999).

## VI. CONCLUSION

The bankruptcy court did not err in holding that the APA was not reasonably susceptible to the interpretation encouraged by Plaintiff and in dismissing the adversary proceeding without allowing Plaintiff to conduct further discovery to look for potential extrinsic evidence that would support his purported interpretation.  Therefore, for the foregoing reasons, we AFFIRM.